**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3649-22

IN THE MATTER OF THE
ESTATE OF BONNIE KREMER,
DECEASED.

_____

Submitted October 22, 2024 – Decided December 4, 2024

Before Judges Gooden Brown and Smith.

On appeal from the Superior Court of New Jersey, Chancery Division, Middlesex County, Docket No. 281685.

Deitch & Perone, PC, attorneys for appellant Patrice Berman (Tanis B. Deitch, of counsel and on the brief).

Respondent has not filed a brief.

PER CURIAM

After a summary proceeding conducted pursuant to Rule 4:67, defendant Patrice Berman appeals two Chancery Division orders. Defendant sought to probate a copy of the will of her deceased sister, Bonnie Kremer. The Chancery Division found defendant failed to overcome the presumption that decedent had revoked her will, and it appointed an administrator for the estate. Defendant

appeals, contending the court committed procedural and legal errors which warrant reversal. We affirm in part and remand for proceedings consistent with this opinion.

I.

Bonnie Levine executed a will on October 7, 1992. It was signed by two witnesses and notarized. The will named Bonnie's sisters, Pamela McGinnis and Patrice Berman, as executrix and contingent executrix respectively.

In 1997 Bonnie married Joseph Kremer. The couple had three children, who were born between 2003 and 2005. The record shows Bonnie did not execute another will after 1992, and the record also shows that her 1992 will did not name plaintiff or their three children.

In 2014, Bonnie Kremer filed for divorce. After protracted divorce litigation lasting nearly ten years, Bonnie passed away on January 24, 2023. The Family Part dismissed her divorce complaint two days later.

Joseph Kremer then sought appointment as administrator of Bonnie's estate. Patrice Berman opposed, and, in February 2023, Joseph Kremer filed a verified complaint and order to show cause seeking appointment as administrator of Bonnie's estate. He named Bonnie's sisters, Pamela McGinnis and Patrice Berman, as defendants. Co-defendant Patrice Berman answered and

2

cross-claimed, seeking to probate the 1992 will and also seeking appointment as executor of Bonnie's estate.

After a hearing in which the trial court considered the submissions of counsel, including certifications of five witnesses,[1] the trial court issued an order dated July 13, 2023.  The court found:

> the presumption of revocation was not overcome by the [d]efendant, Patrice Berman. The [d]ecedent revoked the [w]ill, as she did not give possession of the original to her [attorney] or any other family member. Further, given that the [w]ill was executed in 1992 before the birth of her children and under her maiden name the [c]ourt finds that the [d]ecedent revoked her Will executed in 1992 following [N.J.S.A.] 3B:3-13[.]

Finding decedent revoked the will, the court ordered distribution of the estate pursuant to N.J.S.A. 3B:5-3 without resolving the question of appointment of the administrator.

Defendant appealed the order on July 31, and simultaneously moved before the Chancery Division for a stay, as well as a revised order with findings of fact and conclusions of law pursuant to Rule 1:7-4(a).  On September 7, 2023 plaintiff again applied for appointment as administrator, and defendant cross-

---

[1]  Five witnesses submitted certifications for the trial court's review.  They included:  plaintiff Joseph Kremer; defendant Patrice Berman; Frank DeFalco; Efrain Cabrera; and Robin Schneider, Esq., who served as divorce counsel to decedent.

A-3649-22

moved, opposing plaintiff's motion and seeking an order: rejecting plaintiff's application to be appointed as estate administrator; restraining plaintiff from collecting rents or taking any other action on behalf of the estate; compelling plaintiff to prepare and submit an accounting; appointing a temporary administrator for the estate; and appointing a receiver to manage real property assets in the estate.

In opposition to plaintiff's motion, defendant submitted a second certification. Defendant had worked in decedent's party rental business, and she alleged decedent possessed cash assets of more than $100,000 and real estate assets valued at over $2,000,000. Defendant listed several real estate and business assets that decedent owned, some of which were acquired before her marriage to plaintiff. She identified multiple real estate assets as income producing properties. Defendant also alleged that plaintiff interfered with decedent's active business operations, including closing a party rental business and a consignment business, unilaterally firing employees, removing business vehicles and returning consignment inventory without authorization. Finally, defendant alleged that plaintiff had failed to supply needed tax information to decedent during the divorce proceeding, delaying the filing of federal and state tax returns and exposing decedent to penalties. In her certification, defendant

4

contended that these allegations disqualified plaintiff as administrator and warranted the appointment of an independent administrator.

After the October 20 hearing, the Chancery Division made additional findings and issued a modified order on December 22, 2023:

> [T]he presumption of revocation was not overcome by . . . [d]efendant, Patrice Berman. New Jersey Chancery presumes that if the original [w]ill cannot be found, the [w]ill was revoked by the testatrix. This presumption can be rebutted through clear and convincing evidence.
>
> . . . .
>
> Patrice Berman did not meet the burden of clear, satisfactory, and convincing evidence. No evidence was presented to the [c]ourt illustrating that the [d]ecedent never gave up possession of the [w]ill. Patrice Berman never possessed the original or even a copy of the [w]ill, having only received a copy through the [d]ecedent's attorney, Robin Schneider, Esq. Further, the burden of clear and convincing evidence must also be shown in reference to the contents of the [w]ill. In re Will of Roman, 80 N.J. Super. 481, 483 (Cty. Ct. 1963). The [d]ecedent executed her [w]ill in [1992] before the birth of her children and under her maiden name. Patrice Berman did not show that . . . [d]ecedent ever gave possession of the [w]ill to someone else, nor did she show that the [d]ecedent would not have wanted to update her [w]ill to include her children. The [c]ourt finds that the [d]ecedent revoked her [w]ill executed in 1992 . . . .

The modified order denied defendant's request for a stay of the July 13 order and appointed Ann L. Renaud as estate administrator.

5

Defendant appealed both the July 13 order and the December 22 order, arguing the trial court erred by reaching an unsupported legal conclusion that decedent's will was revoked, and ignored evidence that decedent's will existed at the time of her death.

## II.

We will not disturb a trial court's findings of fact in a summary action proceeding under Rule 4:67 "unless . . . they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Tractenberg v. Twp. of W. Orange, 416 N.J. Super. 354, 365 (App. Div. 2010) (internal quotation marks omitted) (quoting Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484 (1974)) (quoting Fagliarone v. Twp. of No. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)).  However, "[a] trial court's interpretation of the Chancery and the legal consequences that flow from established facts are not entitled to any special deference." Tractenberg, 416 N.J. Super. at 365 (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

We consider defendant's points on appeal.

First, defendant argues that the Chancery Division improperly found that decedent's will was revoked. We disagree.

It is well-settled that if a will was last seen in the possession of the decedent and cannot be found upon the decedent's death, there is a presumption the decedent destroyed the will with the intent to revoke it. In re Davis' Will, 127 N.J. Eq. 55, 57 (E. and A. 1940) ("If such a will was last seen in the custody of the testatrix or she had access to it[,] the fact that it cannot be found after her death raises the presumption that she destroyed it animo revocandi."); In re Bryan's Will, 125 N.J. Eq. 471, 473–74 (E. & A. 1939) ("The law ... applicable to ... lost wills is well defined. If such a will was last seen in the custody of the testatrix or she had access to it[,] the fact that it cannot be found after her death raises the presumption that she destroyed it animo revocandi."); Campbell v. Smullen, 96 N.J. Eq. 724, 727 (E. & A. 1924); In re Calef's Will, 109 N.J. Eq. 181, 185 (N.J. Prerog. Ct. 1931). A proponent intending to probate a copy of a lost will must provide "clear, satisfactory, and convincing [evidence] to rebut the presumption of the original's revocation or destruction . . . ." In re Estate of Ehrlich, 427 N.J. Super. 64, 75 (App. Div. 2012) (citations omitted).

For the presumption of revocation to apply to a lost will, a testator must have had access to their will before their death, and the will cannot be found after their death. In re Davis' Will, 127 N.J. Eq. at 57. A decedent's possession, or opportunity for repossession, of a lost will at the time of their death is a prerequisite for the presumption of revocation to apply. In re Calef's Will, 109 N.J. Eq. at 186 ("Our law . . . does not require an actual tracing of the will back into the possession of the testatrix, but is satisfied by a showing of access, that is, opportunity of repossession, and upon such showing the presumption of revocation remains until rebutted by evidence which is clear, convincing and satisfactory.") (emphasis added).

The record shows no other party besides decedent had possession of the original will and further shows the will was never found. Plaintiff certified that his search for it was unsuccessful. Defendant cites plaintiff's conduct in taking decedent's files from her warehouse and office after her death, presumably to show that the original will exists, but that its whereabouts have been concealed by plaintiff. However, without credible evidence detailing the existence and storage of decedent's original will, assertions that plaintiff has intentionally concealed or destroyed it are speculation. No witness certifications offered by

defendant identifies anyone who saw the original will or had knowledge of its whereabouts.

Because the record shows that decedent never gave up possession of the original will, and it cannot be found, the Chancery Division properly found the presumption of revocation applied.

Once the presumption of revocation applies, the proponent of the will must provide clear and convincing evidence to rebut the presumption. In re Davis' Will, 127 N.J. Eq. at 57. Defendant argues that she has "overcome the presumption the [w]ill was lost, stolen or destroyed," citing to her own certification that decedent "would hide important papers and never destroy[] anything." Defendant also references the certification of Robin Schneider, Esq., to argue that the deceased "would have inquired about the consequence of destroying her current [w]ill and never did."

We agree with the Chancery Division, which found defendant failed to show evidence that decedent would have declined to update her will to include her own children. The record shows defendant stated in her own certification that decedent "was a procrastinator" and that defendant and decedent "did not have a good relationship at the end of [decedent's] life." Decedent's lawyer, Schneider, stated in her certification that decedent had discussed revising her

will but that they "never had time to do so." Defendant proffered no evidence that decedent wanted the 1992 will to control distribution of her estate, despite her marriage in 1997 and the birth of her children in 2003 and 2005.

We discern no abuse of discretion in the Chancery Division's determination that defendant failed to overcome the presumption that decedent revoked her will by clear and convincing evidence.

Defendant next contends that the trial court "arbitrarily ignored" evidence that the original will was in existence at the time of Bonnie's death. We consider this argument meritless, as it ignores our well-settled jurisprudence concerning the presumption of revocation.

Finally, defendant offers several arguments on appeal which were not raised below. She contends the Chancery Division committed error by: not conducting a plenary hearing; failing to make proper findings of fact and conclusions of law pursuant to Rule 1:7-4; requiring an original of the will for probate, contrary to N.J.S.A. 3B:3-2; not granting a stay of its July 13 order; and in ordering distribution according to N.J.S.A. 3B:5-3.

We generally decline to address issues not raised below. Appellate courts will not consider issues that are not raised at the trial level when given an opportunity to do so, "unless the questions so raised on appeal go to the

jurisdiction of the trial court or concern matters of great public interest." Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 235 (1973). For completeness, we comment briefly on three of the points raised before us for the first time.

We review a trial court's decision regarding whether to hold a plenary hearing under Rule 4:67 for abuse of discretion. N.J. Dep't of Envtl. Prot. v. Midway Beach Condo. Ass'n, 463 N.J. Super. 346, 351 (App. Div. 2020). Rule 4:67-5 states that a court may try a summary action on the pleadings if the "affidavits show palpably that there is no genuine issue of material fact." Given that the record shows the original will has never been seen and no one knows where it was stored, there is no genuine issue of material fact on the question of overcoming the presumption of revocation. It follows that the Chancery Division engaged in a proper exercise of discretion when it decided this dispute on the pleadings and affidavits.

We dispose of defendant's argument on the court's denial of the stay by noting that the motion does not comply with the standard for relief set forth in Garden State Equality v. Dow, 216 N.J. 314 (2013). Defendant offered no proofs which show a likelihood of success on the merits.

We briefly consider defendant's arguments about estate distribution. Because the Family Part dismissed decedent's divorce complaint on January 24,

2023, the Legislature's January 8, 2024 amendment to N.J.S.A. 3B:5-3, subsection (d) pipeline retroactivity does not apply. [2] See Roik v. Roik, 477 N.J. Super. 556, 574 (App. Div. 2024). Had pipeline retroactivity applied, subsection (d) would have disqualified plaintiff from taking any share of decedent's estate. Absent pipeline retroactivity, decedent's estate will be distributed by operation of a now-defunct statute the Legislature recently modified to prevent the very outcome contemplated here. Such an outcome is a matter of "great public interest," and warrants our consideration despite the issue not being raised below. Nieder, 62 N.J. at 235.

We note the Chancery Division did not provide findings of fact and conclusions of law to support the portion of its orders which directed that the estate be distributed pursuant to N.J.S.A. 3B:5-3. See R. 1:7-4. Therefore, we remand to the Chancery Division to supplement the record solely on the question of estate distribution and the applicability of N.J.S.A. 3B:5-3. We leave the question of whether the court should solicit additional submissions[3] from

_____

[2] N.J.S.A. 3B:5-3(d)(1).

[3] Defendant argues for application of the Supreme Court's holding in Carr v. Carr, 120 N.J. 336 (1990), to utilize equitable principles to establish a constructive trust from proceeds of decedent's estate for the benefit of the

counsel, hear argument, or conduct a plenary hearing under <u>Rule</u> 4:67-5 to the sound discretion of the court.

Defendant's remaining arguments lack sufficient merit to warrant discussion in a written opinion. <u>See</u> <u>R.</u> 2:11-3(e)(1)(E).

Affirmed in part, remanded in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

children of Bonnie and Joseph Kremer. Because the argument was not raised below, we do not consider it here.